IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALBA DIAZ-GARCIA, *et al.*,

    **Plaintiffs,**

       **v.**

RAFAEL SURILLO-RUIZ, *et al.*,

    **Defendants.**

**Civil No.** 13-1473 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are three motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)"). For the reasons discussed below, the Court **GRANTS in part and DENIES in part** the motion to dismiss filed by the Municipality of Yabucoa ("the Municipality" or "Yabucoa"), Mayor Rafael Surillo-Ruiz ("Mayor Surillo") in his official capacity, and Lydia Ivette Cruz ("Cruz") in her official capacity (Docket No. 46). The Court **DENIES** the motion to dismiss filed by Mayor Surillo in his individual capacity (Docket No. 47). The Court also **DENIES** the motion to dismiss filed by SM Medical Services, CSP ("SM"), Ricardo Rivera-Garcia ("Rivera"), and Victor Simmons ("Simmons") (Docket No. 48).

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs Alba Diaz-Garcia ("Diaz"), Nezmaida Y. Medina-Sanchez ("Medina"), Carlos A. Lazu-Santiago (Lazu), and Juana

Velazquez-Torres ("Velazquez") are current or former employees of the Diagnosis and Treatment Health Center of Yabucoa ("CDT"). (Docket No. 44 at ¶¶ 6-9.)  On October 7, 2013, plaintiffs filed a third amended complaint pursuant to 42 U.S.C. § 1983 ("section 1983") against defendants Municipality, Mayor Surillo in his official and individual capacities, SM, Rivera, Simmons, Cruz, ABC Corporation, ABC Insurance Company, Jane Doe, and John Doe.  Id. Plaintiffs allege that they suffered adverse employment actions because of their political affiliations in violation of their First, Fifth, and Fourteenth Amendment rights.  Id. at ¶¶ 4, 158-65.   Additionally, plaintiffs assert that the Court has supplemental jurisdiction over their Puerto Rico law claims.[1] Plaintiffs seek economic, compensatory, and punitive damages, as well as declaratory, injunctive, and equitable relief.  Id. at p. 1.

        On October 15, 2013, defendants Municipality and Mayor Surillo in his official capacity filed a motion to dismiss the third amended complaint pursuant to Rule 12(b)(6), which defendant

---

[1] Plaintiffs allege violations of Article II, Sections 1-2, 4, and 6-7 of the Puerto Rico Constitution, Puerto Rico Laws 80 and 100, and Articles 1802 and 1803 of the Puerto Rico Civil Code. (Docket No. 44 at ¶¶ 4, 167-68.)

Cruz later joined in her official capacity.[2]  (Docket Nos. 46 & 69.)   They contend:  (1) that the claims against defendants in their official capacities should be dismissed because they are redundant in light of the claims against defendant Municipality; (2) that the complaint should be dismissed because it does not adequately plead that the alleged adverse employment actions were made "under color of law" as required by section 1983; (3) that claims based on the Due Process Clause of the Fifth Amendment should be dismissed because there are no claims against federal actors; (4) that claims against defendant Municipality for punitive damages should be dismissed because municipalities are immune from punitive damages; and (5) that the Court should not exercise supplemental jurisdiction over plaintiffs' Puerto Rico law claims. (Docket No. 46.)

On October 21, 2013, defendant Mayor Surillo in his individual capacity filed a motion to dismiss the third amended complaint pursuant to Rule 12(b)(6).  (Docket No. 47.)[3]   He contends (1) that the complaint does not adequately plead that the

---

[2] Although defendant Cruz filed an Answer to the Third Amended Complaint in her <u>individual</u> capacity (Docket No. 78), she did not move the Court to dismiss the claim against her in her <u>individual</u> capacity.  With respect to defendant Cruz, therefor, the Court addresses only the Motion to Dismiss the claim against her in her official capacity.

[3] Defendant Mayor Surillo's motion to dismiss the third amended complaint incorporates by reference all arguments from his motion to dismiss plaintiffs' original complaint.  This first motion to dismiss appears at Docket No. 26.

alleged adverse employment actions were made "under color of law" as required by section 1983 and (2) that the Court should not exercise supplemental jurisdiction over the plaintiffs' Puerto Rico law claims.  (Docket No. 26 at pp. 6-8.)

Defendants SM, Rivera, and Simmons also filed a motion to dismiss the third amended complaint pursuant to Rule 12(b)(6) on October 21, 2013.  (Docket No. 48.)  They contend that the complaint does not adequately plead that the alleged adverse employment actions were made "under color of law" as required by section 1983.  Id. at pp. 8-16.

On November 22, 2013, plaintiffs filed a consolidated response to the motions to dismiss.  (Docket No. 66.)

**B.   Factual Background**

As required by Rule 12(b)(6) analysis, the Court treats as true the following non-conclusory factual allegations stated in the plaintiffs' complaint, see Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 10 (1st Cir. 2011):

**1.   The Municipality-CDT Relationship**

A CDT is a government-created and owned health center designed to provide health services to indigent populations. (Docket No. 44 at p. 24 n.3.)  The Municipality assumed the Puerto Rico Department of Health's responsibility to administer and control its CDT.   Id. at ¶ 21.  As a result, the Municipality

became the nominating authority of its CDT, and CDT employees were municipal employees.  Id. at ¶ 22.

On February 3, 2011, the Municipality entered into a contract with defendant SM, a corporation registered and organized under the laws of Puerto Rico.  (Docket No. 30-1.) Pursuant to this contract, SM assumed the Municipality's responsibility for the administration and operation of the CDT. Id. at § 1.  The contract stipulates, *inter alia*, (1) that the relationship between the Municipality and SM was to be that of an independent contractor, (2) that CDT employees recruited after execution of the contract were not to be considered municipal employees unless they were recruited directly by the Municipality and were paid from the municipal budget,[4] (3) that the Municipality and SM would coordinate the selection of CDT personnel,[5] and (4) that the Mayor would appoint an Administrative Liaison Officer. Id. at §§ 10, 12, 26, 36(D).

---

[4] It appears from the third amended complaint that all plaintiffs were hired after the execution of the contract between the Municipality and SM on February 3, 2011:  (1) Plaintiff Velazquez was hired in February 2011, plaintiffs Medina and Lazu were hired in March 2011, and plaintiff Diaz was hired on May 11, 2011.  (Docket No. 44 at ¶¶ 6-9.)

[5] The contract states as follows:  "In the event of a need for contracting staff or services, [SM] agrees to offer [the Municipality] the opportunity and/or coordinate with [the Municipality] the selection of personnel, insofar as this will not affect the functions and obligations of [SM]."  (Docket No. 30-1 at § 36(D).)

### 2.    The 2012 Yabucoa Mayoral Election

On November 6, 2012, a highly contentious mayoral election was held in Yabucoa.  (Docket No. 44 at ¶ 38.)  As a result of the election, defendant Mayor Surillo of the Popular Democratic Party ("PDP") defeated Angel "Papo" Garcia of the New Progressive Party ("NPP").  Id. at ¶¶ 1 & 38.  The four plaintiffs are loyal NPP supporters and actively supported defendant Mayor Surillo's opponent, Mayor Angel "Papo" Garcia of the NPP.  Id. at ¶¶ 6-9.  Plaintiffs detail in their complaint specific facts and encounters to support their contention that defendants knew plaintiffs' political affiliations, id. at ¶¶ 6-9, 94, a matter which defendants do not address in their motions to dismiss.

### 3.    CDT Employment Changes After the Mayoral Election

Immediately after the November 2012 mayoral election, Yabucoa's CDT became increasingly politically charged.  (Docket No. 44 at ¶ 40.)  Mayor Surillo routinely met with defendants Rivera (SM's president) and Simmons (SM'S director).  Id. at ¶¶ 51-52.  In late 2012 or early 2013, upon Mayor Surillo's request, defendants Simmons and/or Rivera gave Mayor Surillo a list of all CDT employees.  Id. at ¶ 44.  Mayor Surillo (and/or his agents or employees) looked at the list and immediately started saying "this one has to go" and "this one is out."  Id. at ¶ 49.

In the months after the election, Defendants Rivera and Simmons repeatedly told different CDT employees, including each

of the four plaintiffs, that there were going to be changes in CDT administrative positions because "Papo had lost the election." (Docket No. 44 at ¶ 75.)  Defendants Rivera and Simmons explained that Mayor Surillo requested changes because he wanted the positions "for those he could trust" and for those who worked for his campaign.  Id.  On one occasion, defendant Rivera told plaintiff Velazquez that Mayor Surillo requested changes with regards to employees, adding "the new mayor does not want [plaintiffs] Lazu[,] Alba [Diaz]," or Medina because he "wanted people loyal to him." Id. at ¶ 78.  On another occasion, plaintiff Medina asked defendant Rivera if she was going to be fired, and defendant Rivera replied that "the new Mayor [Surillo] wanted his people of confidence in the administrative and high rank positions of the Yabucoa CDT."  Id. at ¶ 89.

### 4.   Plaintiffs Medina and Lazu's Demotions

In February 2013, a meeting was held between Mayor Surillo and all of the CDT nurses, but plaintiffs Medina and Lazu, both CDT nurses, were not invited.  (Docket No. 44 at ¶¶ 94-96.) Later that day, defendant Rivera told plaintiff Medina that Mayor Surillo requested that Medina be transferred or relocated to another area and position in the CDT.  Id. at ¶ 97.  Defendant Rivera explained that plaintiff Medina "had to understand that [Mayor Surillo] wanted his people in the administrative positions to have direct communication with them."  Id. at ¶ 98.  Defendant

Rivera added that he was going to comply with this request "because it had been an order from the mayor, who is the boss, and thus [he] had to comply." Id. at ¶ 97.  Plaintiff Medina was demoted from Director of Nursing to "purchasing officer." Id. at ¶ 100.  Her office was relocated to the warehouse and she received a salary reduction. Id. at ¶¶ 101-102, 107.

In late February 2013, plaintiff Lazu was told that he would be terminated unless he relocated to another facility. (Docket No. 44 at ¶ 111.)  He was transferred to a town approximately one hour away from Yabucoa and received a salary reduction. Id. at ¶¶ 113-114.

The functions and duties of plaintiffs Medina and Lazu were given to newly-contracted nurses that were affiliated with the PDP and actively supported Mayor Surillo's campaign. (Docket No. 44 at ¶ 118.)  Defendant Simmons later explained to plaintiff Medina that Mayor Surillo had requested a list of CDT employees, went through the list, and identified those to be terminated by openly stating "[plaintiff] Carlos Lazu, oh that is a stone thrower[6] ['tirapiedras' in Spanish] for Rafy [Mayor Surillo], he's out; [plaintiff] Nezmaida Medina, who's that?  Oh the sister of the redheaded guy, she's out," and continued like that down the list. Id. at ¶ 105.

_____

[6] "Stone thrower" is the term used in the Amended Complaint. A better translation for "tirapiedras," as the term is used in this context, is "political agitator."

### 5.   Plaintiff Diaz's Termination

On January 31, 2013, defendant Rivera terminated plaintiff Diaz from her position as a CDT administrative secretary. (Docket No. 44 at ¶¶ 6, 125, 128.)  Defendant Rivera explained "I have to terminate you [. . .] even though I have nothing bad to say about your work, things have changed."  Id. at ¶ 128.  Days later, defendant Rivera openly admitted to another CDT employee that "the new mayor [Surillo] wants people whom he trusts in the high ranking and administrative positions; because of this we had to get rid of [plaintiff] Alba [Diaz] . . . because she was not of his trust." Id. at ¶ 129.

### 6.   Plaintiff Velazquez's Harassment and Constructive Discharge

After the election, Mayor Surillo appointed defendant Cruz as the CDT Municipal Liaison Officer. (Docket No. 44 at ¶¶ 15, 138.)  Defendant Cruz routinely bypassed plaintiff Velazquez, who was CDT's "de-facto administrator," by making requests to other CDT employees below plaintiff Velazquez in the chain of command, effectively depriving plaintiff Velazquez of her duties.  Id. at ¶ 139.  Defendant Cruz would exclude plaintiff Velazquez from CDT affairs and would later accuse her of not doing her work.  Id. at ¶ 141.  Defendant Cruz would yell at plaintiff Velazquez things like "don't you know that you are no longer entitled to give instructions" because there is "a new administration."  Id. at ¶ 142.  Plaintiff Velazquez alleges that

defendants Rivera and Simmons, "upon [defendants] Cruz and [Mayor] Surillo's request," suspended plaintiff Velazquez from work on July 2, 2013, "on false and pretextual reasons created by and involving [defendant] Cruz." <u>Id.</u> at ¶ 148.  Plaintiff Velazquez later resigned because of the alleged "constant harassment." <u>Id.</u> at ¶ 152.

## II.  RULE 12(b)(6) MOTION TO DISMISS STANDARD

Rule 12(b)(6) allows the Court to dismiss a complaint when the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  When considering a motion pursuant to Rule 12(b)(6), the Court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." <u>Ocasio-Hernandez</u>, 640 F.3d at 17.  While detailed factual allegations are not necessary to survive a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." <u>Id.</u> at 12 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 680 (2009)).  Any "[n]on-conclusory factual allegations in the complaint[, however,] must . . . be treated as true, even if seemingly incredible." <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (citing <u>Iqbal</u>, 556 U.S. at 681).  An adequate complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." <u>Grajales v. P.R. Ports Auth.</u>, 682 F.3d 40, 44 (1st Cir. 2012) (internal quotation marks and citation

omitted).   The  complaint  need  not  plead  facts  sufficient  to
establish  a  *prima  facie*  case,  but  "the  elements  of  a  *prima  facie*
case  may  be  used  as  a  prism  to  shed  light  upon  the  plausibility  of
the  claim."   Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54
(1st Cir. 2013).   A court, however, may not "attempt to forecast a
plaintiff's  likelihood  of  success  on  the  merits;  'a  well-pleaded
complaint  may  proceed  even  if  . . .  a  recovery  is  very  remote  and
unlikely.'"   Ocasio-Hernandez, 640 F.3d at 13 (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 556 (2007)).   Overall, "[t]he
relevant  inquiry  focuses  on  the  reasonableness  of  the  inference  of
liability  that  the  plaintiff  is  asking  the  court  to  draw  from  the
facts  alleged  in  the  complaint."   Id. at 13.

## III. ANALYSIS

### A.   Claims Against Defendants in Their Official Capacities

A  suit  against  a  municipal  official  in  his  or  her
official  capacity  is  considered  a  suit  against  the  municipality
itself.   Kentucky v. Graham, 473 U.S. 159, 166 (1985); Surprenant
v. Rivas, 424 F.3d 5, 19 (1st Cir. 2005).   A municipality can be
sued  directly  under  section  1983  for  monetary,  declaratory,  and
injunctive  relief.   Monell v. Dep't of Soc. Servs. of N.Y., 436
U.S. 658, 690 (1978).   When a municipality is sued directly, claims
against  municipal  employees  in  their  official  capacities  are
redundant  and  may  be  dismissed.   Decotiis v. Whittemore, 635 F.3d
22, 26, 38 (1st Cir. 2011) (affirming dismissal of official-

capacity defendant as redundant of the suit against local government agency).

Defendants Municipality, Mayor Surillo in his official capacity, and Cruz in her official capacity move to dismiss the official capacity claims because they are redundant in light of the claims against the Municipality. Plaintiffs argue that the claims against the Municipality and Mayor Surillo in his official capacity are not duplicative because the Municipality is being sued for damages and Mayor Surillo is being sued for injunctive relief. (Docket No. 66 at p. 19.) This argument is unpersuasive, however, because the suit against defendant Mayor Surillo in his official capacity is a suit against the Municipality itself, see Graham, 473 U.S. at 166, and the Municipality can be sued for injunctive relief, see Monell, 436 U.S. at 690. Plaintiffs "have no objection" to dismissing the official capacity claims to the extent that they have duplicative remedies. (Docket No. 66 at p. 19.)

Accordingly, the claims against defendants Mayor Surillo and Cruz in their official capacities in the Municipality are **DISMISSED WITH PREJUDICE** because they are duplicative of the claims against the Municipality itself. This dismissal does not affect the claims against Mayor Surillo sued in his individual capacity.[7]

---

[7] See footnote 2, supra.

**B.   Section 1983 Claims for Political Discrimination**

"Section 1983 is the conventional vehicle through which relief is sought for claims of political discrimination by state actors." Rodriguez-Reyes, 711 F.3d at 54.  There are two essential elements of an action under section 1983:  (1) a person acts "under color of any statute, ordinance, regulation, custom, or usage, of any State," and (2) in so acting, that person "subjects, or causes to be subjected, any citizen [] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  In their motions to dismiss, all defendants argue that plaintiffs fail to allege facts demonstrating that the adverse employment actions were committed "under color of law."  (Docket Nos. 26 & 46-48.)

**1.   Claims Against Defendants Municipality and Mayor Surillo in his Individual Capacity**

Municipalities are "persons" for the purpose of a section 1983 claim, and, therefore, are subject to claims pursuant to the statute.   Monell, 436 U.S. at 690.   Generally, "municipalities are not liable under section 1983 for the actions of their non-policymaking employees." Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011).  Rather, a plaintiff "must identify a municipal policy or custom that caused the plaintiff's injury." Id. (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997) (internal quotation marks omitted)). Municipal "policy or custom, though, may be established by 'a

single decision by municipal policymakers under appropriate circumstances.'" Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). Municipal liability only attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Kelley, 288 F.3d at 9 (quoting Pembaur, 475 U.S. at 481).  "[W]hether an official had final policymaking authority is a question of state law." Pembaur, 475 U.S. at 483.

The Court finds that plaintiffs adequately plead facts demonstrating that Mayor Surillo ordered the adverse employment actions that caused plaintiffs to be subjected to the deprivation of their constitutional rights. See 42 U.S.C. § 1983. For example, plaintiffs allege that defendants Rivera and Simmons stated that Mayor Surillo requested CDT employment changes because he wanted certain positions "for those he could trust" and for those who worked on his campaign. (Docket No. 44 at ¶ 75.) Plaintiffs allege that defendant Rivera explained to plaintiff Medina that Mayor Surillo had requested a list of CDT employees and used the list to identify those to be terminated, stating openly "[plaintiff] Carlos Lazu, oh that is a political agitator ['tirapiedras' in Spanish] for Rafy [Mayor Surillo], he's out; [plaintiff] Nezmaida Medina, who's that?  Oh the sister of the redheaded guy, she's out." Id. at ¶ 105.  Defendant Rivera told

plaintiff Medina that Mayor Surillo requested that Medina be
transferred or relocated to another area and position in CDT.  Id.
at ¶ 97.  Defendant Rivera admitted to another CDT employee that
"the new mayor [Surillo] wants people whom he trusts in the high
ranking and administrative positions; because of this we had to get
rid of [plaintiff] Alba [Diaz] . . . because she was not of his
trust."  Id. at ¶ 129.

         The Court also finds that plaintiffs adequately
plead facts demonstrating that Mayor Surillo possessed the final
authority with respect to CDT personnel decisions.  See Kelley, 288
F.3d at 9.  In Puerto Rico, the mayor is considered "the highest
authority of the executive branch of the municipal government" and
"is charged with the direction, administration, and supervision of
the operations of the municipality."  P.R. Laws Ann. tit. 21,
§ 4109 (2011).  The mayor has the power to "[a]ppoint all officials
and employees and dismiss them from their positions."  Id.
§ 4109(o).  Although plaintiffs were CDT employees and do not
allege that they were municipal employees, the Municipality had the
power to coordinate the selection of CDT personnel pursuant to its
contract with defendant SM.  See Docket No. 30-1 at § 36(D).
Several facts alleged in the third amended complaint reflect that
Mayor Surillo had the final authority to make CDT personnel
decisions, including defendant Rivera's statement that he complied
with Mayor Surillo's request to transfer plaintiff Medina to

another position "because it had been an order from the mayor [Surillo] who is the boss, and thus [he] had to comply." See Docket No. 44 at ¶ 97.

Thus, the Court finds that plaintiffs adequately plead facts demonstrating that Mayor Surillo, possessing the Municipality's final authority with respect to CDT personnel decisions, ordered the adverse employment actions that caused plaintiffs to be subjected to the deprivation of their constitutional rights. Accordingly, the Court **DENIES** the motions to dismiss the section 1983 claims against the Municipality and Mayor Surillo in his individual capacity.

### 2.    Claims Against Defendants SM, Rivera, and Simmons

Defendants SM, Rivera, and Simmons argue that they are private actors who cannot be liable pursuant to section 1983 because they did not act under color of law. The First Circuit Court of Appeals recognizes three ways in which a private party may be deemed to have acted under color of law for purposes of section 1983: "the public function test, the state compulsion test, and the nexus/joint action test." Mead v. Independence Ass'n., 684 F.3d 226, 231 (1st Cir. 2012). The Court finds that plaintiffs' third amended complaint sufficiently alleges facts that meet the "state compulsion test." "Under the state compulsion test, a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such

significant encouragement, either overt or covert, that the
[challenged conduct] must in law be deemed to be that of the
State.'" Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412
F.3d 1, 5 (1st Cir. 2005) (quoting Blum v. Yaretsky, 457 U.S. 991,
1004 (1982)).

        Plaintiffs' third amended complaint describes
several instances in which Mayor Surillo compelled and encouraged
defendants SM, Rivera, and Simmons to execute adverse employment
decisions against plaintiffs. For example, when defendant Rivera
demoted plaintiff Medina, he explained to her that Mayor Surillo
had requested Medina's relocation to another CDT position and that
he was going to comply with this request "because it had been an
order from the mayor, who is the boss, and thus [he] had to
comply." (Docket No. 44 at ¶ 97.) Defendant Rivera further
explained that plaintiff Medina "had to understand that [Mayor
Surillo] wanted his people in the administrative positions to have
direct communication with them." Id. at ¶ 98. On another
occasion, defendant Rivera explained that they "had to get rid of
[plaintiff] Alba [Diaz]" because "the new mayor [Surillo] wants
people whom he trusts in the high ranking and administrative
positions." Id. at ¶ 129.

        Thus, the Court finds that plaintiffs adequately
plead facts to meet the "state compulsion test," see
Estades-Negroni, 412 F.3d at 5, and the private party defendants,

SM, Rivera, and Simmons, therefore acted under color of law. Accordingly, the Court **DENIES** the motion to dismiss the section 1983 claims against defendants SM, Rivera, and Simmons.

### C.   Claims Based on the Fifth Amendment

Defendants argue that plaintiffs fail to state a due process claim pursuant to the Fifth Amendment. (Docket No. 46 at ¶ 4.28.) Plaintiffs' complaint does not discuss a Fifth Amendment due process claim, but merely includes the Fifth Amendment in a list of Amendments that are claimed to be violated. (Docket No. 44 at ¶ 4.) Plaintiffs fail to provide any explanation as to how their Fifth Amendment rights were violated. "Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority." Rodriguez v. Mun. of San Juan, 659 F.3d 168, 175 (1st Cir. 2011). A party may not merely "mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Accordingly, the Court finds that plaintiffs fail to state a Fifth Amendment claim. Additionally, it is well settled that the Fifth Amendment Due Process Clause applies only to actions of the federal government, not to those of local governments. See, e.g., Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007).

Plaintiffs do not bring suit against the federal government or any federal actors.

Accordingly, plaintiffs' Fifth Amendment claims are **DISMISSED WITH PREJUDICE.**

### D. Claims for Punitive Damages Against Defendant Municipality

Plaintiffs seek "punitive damages in excess of $2,000,000.00 for each Plaintiff and/or $500,000.00 against each defendant." (Docket No. 44 at p. 56.)  It has long been held, however, that municipalities are immune from punitive damages pursuant to section 1983. <u>City of Newport v. Fact Concerts, Inc.,</u> 453 U.S. 247, 271 (1981).  Accordingly, plaintiffs' claims for punitive damages against the Municipality are **DISMISSED WITH PREJUDICE.**  This dismissal does not affect the claims for punitive damages against the other defendants, who are sued in their personal capacities.

### E. Supplemental Jurisdiction over Plaintiffs' Puerto Rico Law Claims

When a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over state law claims that form part of the same case or controversy.  28 U.S.C. § 1367(a).  Because plaintiffs' section 1983 claims remain, the Court may exercise supplemental jurisdiction over state law claims that "derive from a common nucleus of operative fact." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966).  A court should

consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving [supplemental] state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). In light of these factors, as well as plaintiffs' remaining section 1983 claims to ground jurisdiction, the Court will exercise its supplemental jurisdiction over plaintiffs' Puerto Rico law claims. Accordingly, defendants' motions to dismiss plaintiffs' Puerto Rico law claims are **DENIED.**

## IV. CONCLUSION

For the reasons expressed above, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss filed by defendants Municipality, Mayor Surillo in his official capacity, and Cruz in her official capacity (Docket No. 46). The Court **GRANTS** the motion to dismiss with regard to (1) the claims against defendants Mayor Surillo and Cruz in their official capacities, (2) the Fifth Amendment claims, and (3) the claims for punitive damages against the Municipality. The Court **DENIES** the motion with regard to (1) the section 1983 claims against the Municipality and (2) the supplemental Puerto Rico law claims.

The Court **DENIES** the motion to dismiss filed by Mayor Surillo in his individual capacity (Docket No. 47). The Court also **DENIES** the motion to dismiss filed by SM, Simmons, and Rivera (Docket No. 48).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 8, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE