**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ALBA DIAZ-GARCIA, *et al.*,

**Plaintiffs**,

**v.**

RAFAEL SURILLO-RUIZ, *et al.*,

**Defendants.**

**Civil No.** 13-1473 (FAB)

**MEMORANDUM & ORDER**

BESOSA, District Judge.

Before the Court is plaintiffs' second motion to compel production of documents from SM Medical Services, CSP ("SM"), Ricardo Rivera-Garcia, and Victor Simmons (collectively, "defendants"). (Docket No. 103.) Having considered the parties' arguments, the Court **GRANTS** plaintiffs' motion to compel, subject to a protective order.

## I. BACKGROUND

Plaintiffs are current or former employees of the Diagnosis and Treatment Health Center of Yabucoa ("CDT"), which is operated by SM pursuant to SM's contract with the Municipality of Yabucoa. (Docket No. 44.) In their third amended complaint filed on October 7, 2013, plaintiffs allege that because of their political affiliations, they suffered adverse employment actions in the wake of the November 2012 Yabucoa mayoral election. Id.

On May 6, 2014, as part of the discovery process, plaintiffs asked defendants for the employment applications and appointments of seventeen CDT employees. (Docket No. 103 at pp. 2-3.) According to the plaintiffs, these employees were "new appointees that were hired by SM Medical to work in the Yabucoa CDT after the 2012 elections."[1] (Docket No. 108 at p. 4.) Defendants refused to produce the documents. (Docket No. 103 at p. 3.) As a result, plaintiffs filed a motion to compel discovery (Docket No. 85), which the Court denied because plaintiffs failed to comply with the good-faith meet and confer requirement of Local Rule 26(b) (Docket No. 102). Counsel for both parties met and conferred on August 6, 2014, at which time plaintiffs expanded their original request by asking for the complete personnel files of the same seventeen CDT employees. (Docket No. 103 at p. 3.) Defendants informed plaintiffs on August 15, 2014, that they would not provide the personnel files but instead would produce the dates of the seventeen employees' applications and their positions held at the

[1] In their second motion to compel, plaintiffs listed the seventeen employees' names and stated that they "underst[ood]" that the employees "are or were working at the Yabucoa CDT after the 2012 elections." (Docket No. 103 at pp. 2-3.) Plaintiffs clarified in their reply that the employees were "new appointees that were hired by SM Medical to work in the Yabucoa CDT after the 2012 elections." (Docket No. 108 at p. 4.) Defendants, in their sur-reply, did not challenge that these seventeen individuals were, in fact, CDT employees hired after the 2012 election. (Docket No. 113.) The Court therefore rules on this motion to compel with the understanding that the seventeen employees were hired to work at the CDT after the 2012 election.

CDT. Id. at p. 4. Unsatisfied with this response, plaintiffs now move the Court to compel the defendants to produce the seventeen employees' personnel files. (Docket No. 103.) Defendants filed an opposition to the motion. (Docket No. 105.) Plaintiffs submitted a reply to defendants' response (Docket No. 108), and defendants submitted a sur-reply (Docket No. 113). The discovery deadline in this case is October 24, 2014. (Docket No. 52.)

## II. ANALYSIS

Defendants object to producing the seventeen employees' personnel files on three grounds: relevance, privacy, and timeliness. (Docket No. 105.) The Court will address each objection in turn.

### A. Relevance of the Personnel Files

Federal Rule of Civil Procedure 26(b) ("Rule 26(b)") limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Rule 26(b) allows a court, for good cause, to "order discovery of any matter relevant to the subject matter involved in the action." Id. "The scope of discovery is broad, and to be discoverable, information need only appear to be 'reasonably calculated to lead to the discovery of admissible evidence.'" Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 52 (1st Cir. 2009) (quoting Fed. R. Civ. P. 26(b)(1)) (other quotation marks and internal citation omitted).

**1. The Personnel Files are Relevant to the Plaintiffs' Political Discrimination Claim**

"A plaintiff bringing a political discrimination claim bears the burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that his constitutionally protected conduct . . . was a substantial or motivating factor behind his dismissal." Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) (internal quotation marks and citations omitted). Because "it is rare that a 'smoking gun' will be found in a political discrimination case, [] circumstantial evidence alone may support a finding of political discrimination." Lamboy-Ortiz v. Ortiz-Velez, 630 F.3d 228, 240 (1st Cir. 2010). To meet their burden, "[p]laintiffs who have lost their jobs [often] present evidence about the hiring practices of the defendant in the wake of an election generally — i.e., evidence that the defendants filled all, or most, recently vacated positions with supporters of their political affiliation." Peguero-Moronta, 464 F.3d at 46.

Examination of the personnel files of seventeen new employees hired after the 2012 mayoral election would not only lead to evidence of the defendants' hiring practices in the wake of the 2012 election generally, see id., but may also lead to circumstantial evidence to support the plaintiffs' claim. For example, defendants assert that no one replaced plaintiffs Nezmaida Y. Medina-Sanchez ("Medina") and Carlos Lazu-Santiago ("Lazu") when they were, respectively, demoted from the position of Nursing

Director and transferred to a different facility. (Docket No. 108-1, ¶¶ 3(h) & 4(f).) Yet defendants hired seventeen new CDT employees after the 2012 election. (Docket No. 108 at p. 4.) Examining the personnel files of these newly hired employees may reveal that some of them were hired to perform tasks for which plaintiffs Medina and Lazú were responsible prior to their demotion and transfer, notwithstanding defendants' assertion that the plaintiffs were not "replaced." See Acevedo Garcia v. Vera Monroig, 30 F. Supp. 2d 141, 155 (D.P.R. 1998) (Pieras, J.) (finding list of newly hired employees provided by defendants insufficient to determine if new employees performed duties previously done by plaintiffs in political discrimination case, and noting that personnel files of the new employees would be helpful evidence). If plaintiffs can further prove that these new employees belonged to the new mayor's political party, then this circumstantial evidence will support their political discrimination claim. See Rodriguez-Rios v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998) (finding that plaintiff who "adduced evidence that *every* employment task for which she had been responsible prior to her demotion was performed thereafter by [a] member [of the opposing political party]" established prima facie case of political discrimination).

Therefore, the Court finds that the request to view the personnel files is "reasonably calculated to lead to the

discovery of admissible evidence" to support the plaintiffs' political discrimination claim. See Fed. R. Civ. P. 26(b)(1). Although this is sufficient to support a discovery order under Rule 26(b), the Court will further establish how the personnel files are also relevant to the defenses raised by the defendants. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" (emphasis added)).

**2. The Personnel Files are Relevant to the Defendants' Defenses of "Company Reorganization" and "Economic Problems"**

Plaintiffs in political discrimination cases "have the threshold burden to produce sufficient direct or circumstantial evidence from which a rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action." Rodriguez-Rios, 138 F.3d at 24. The burden then shifts to the defendant to "articulate a nondiscriminatory basis for the adverse employment action and *prove by a preponderance of the evidence that it would have been taken without regard to plaintiff's political affiliation*." Id. (emphasis in original). "If the defendant makes such a showing, the plaintiff may attempt to discredit the tendered nondiscriminatory reason with either direct or circumstantial evidence." Balaguer-Santiago v. Echegoyen, 219 F. App'x. 13, 16 (1st Cir. 2007). A plaintiff tasked with discrediting "the reasons

given for his discharge . . . should not normally be denied the information necessary to establish that claim." Cf. Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (addressing Age Discrimination in Employment Act claim, in which the burden of persuasion remains with the plaintiff). In fact-sensitive political discrimination cases, personnel files of certain non-party employees may contain valuable evidence of pretext. Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991) (finding that the district court abused its discretion in a political discrimination case when it denied discovery of personnel files of employees who committed infractions more serious than plaintiffs but were not similarly discharged, reasoning that "[a]ll or some parts of these personnel files could be central to the plaintiffs' effort to prove pretext").

Defendants assert that plaintiffs were terminated or demoted due to "reorganization of [the] company" and "economic problems." (Docket No. 108-1 at ¶¶ 2(d), 2(f), 3(d), 3(g).) Examination of the personnel files of seventeen new employees hired after the 2012 mayoral election may lead the plaintiffs to circumstantial evidence to prove that these reasons are pretextual. For example, the personnel files may reveal that new employees were hired to perform the same tasks performed by plaintiffs who were terminated or demoted, demonstrating that the company was not "reorganized." The personnel files may also reveal salary

information about the new employees, which could refute the defense that the company needed to terminate and demote the plaintiffs because it suffered "economic problems." Therefore, the request to view the personnel files is "reasonably calculated to lead to the discovery of admissible evidence" to rebut defendants' defenses. See Fed. R. Civ. P. 26(b)(1).

Thus, the Court finds that discovery of the personnel files of the seventeen CDT employees hired after the 2012 mayoral election is relevant to both the plaintiffs' political discrimination claim and the defendants' defenses. See Fed. R. Civ. P. 26(b)(1).

**B. Privacy Rights of Unrelated Non-Parties**

Defendants object to producing the seventeen employees' personnel files on grounds that the files contain confidential information and producing them would violate the employees' privacy rights. (Docket No. 105.) To be sure, defendants do not claim that the personnel files contain privileged information, which is undiscoverable pursuant to Rule 26(b). See Fed. R. Civ. P. 26(b)(1). Rather, defendants point to general privacy interests to support their objection.

Courts have considered the privacy interests of non-party employees when deciding whether to order discovery of their personnel files in employment discrimination cases. See, e.g., Whittingham v. Amherst Coll., 164 F.R.D. 124, 127-28 (D. Mass.

1995) ("[W]hile discovery is usually broad, Plaintiff has not demonstrated that the [personnel] files he seeks, even if marginally relevant, outweigh the privacy interests of these individuals."); Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994) (upholding district court decision to curtail discovery of personnel files where district judge examined the files, determined they were not relevant, and concluded that disclosure would invade employees' privacy). Courts also find that protective orders can adequately safeguard the private information contained in personnel files. See, e.g., Barella v. Vill. of Freeport, 296 F.R.D. 102, 106 (E.D.N.Y. 2013) ("in most cases, a protective order can appropriately remedy privacy concerns arising from discovery of personnel records" (internal quotation marks and citation omitted)); Glenn v. Williams, 209 F.R.D. 279, 282 (D.D.C. 2002) (finding that the protective order to which the parties agreed for the release of 25 personnel files made "any remaining privacy concerns negligible"); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (ordering discovery, subject to a protective order, of personnel file of employee who replaced plaintiff after he was demoted).

Plaintiffs drafted a protective order that would limit access to and use of the information contained in the personnel

files.[2] (Docket No. 103-1.) Plaintiffs filed this proposed protective order with their second motion to compel. Id. Neither in their opposition to the second motion to compel nor in their sur-reply do defendants explain why such a protective order would not cure their privacy and confidentiality concerns. (See Docket Nos. 105 & 113.)

The Court therefore finds that any privacy interests implicated by the disclosure of personnel files will be adequately safeguarded by a protective order.

**C. Timeliness of the Request for Production**

Defendants argue that plaintiffs' August 6, 2014 request for production of personnel files was untimely because it came "a full eight months after the January 31st written discovery deadline." (Docket No. 105 at p. 3.) Defendants are mistaken, as plaintiffs correctly point out in their reply, see Docket No. 108 at pp. 4-5, because the only discovery deadline ordered by the Court is October 24, 2014. (See Case Management Order, Docket No. 52 at p. 8.) Defendants argue in their sur-reply that the

[2] The proposed protective order provides that the plaintiffs will inspect the personnel files and identify the specific documents that must be produced. (Docket No. 103-1.) It further stipulates (1) that no document regarding medical treatment or conditions will be requested, (2) that the defendants can redact social security numbers and dates of birth from the requested documents, (3) that the documents will not be disclosed to third parties and will only be used for litigation in this case, and (4) that the documents will be returned to the defendants after the final disposition of the case. Id.

request for production nonetheless came at the "11th hour." (Docket No. 113 at p. 2.) Defendants do not allege, however, that producing the requested documents would be burdensome. Thus, the Court finds that the plaintiffs' request for the production of seventeen personnel files on August 6, 2014, two and a half months before the discovery deadline, was timely.

**III. CONCLUSION**

For the reasons expressed above, the Court finds that the personnel files are relevant and the request for them was timely. The Court acknowledges, however, that production of the documents may implicate some privacy concerns. Accordingly, the Court **GRANTS** plaintiffs' motion to compel the production of the seventeen CDT employees' personnel files, subject to a protective order. The Court **ORDERS** the parties to make every effort to reach agreement on an appropriate protective order, and to submit the order to the Court for approval **by September 30, 2014**. Plaintiffs' proposed protective order (Docket No. 103-1) will be used as a working document.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 16, 2014.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE