**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ALBA DIAZ-GARCIA, *et al.*,

**Plaintiffs**,

**v.**

RAFAEL SURILLO-RUIZ, *et al.*,

**Defendants.**

**Civil No.** 13-1473 (FAB)

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Before the Court is defendants' motion *in limine* to preclude plaintiffs from presenting the testimony of Dr. Gabriel Laborde, (Docket No. 140), which plaintiffs oppose, (Docket No. 147). For the reasons that follow, the Court **DENIES** defendants' motion.

**BACKGROUND**

Current and former employees of the Diagnosis and Treatment Health Center of Yabucoa ("CDT") brought this political discrimination suit, pursuant to 42 U.S.C. § 1983, against the Municipality of Yabucoa (the "Municipality"), the mayor of Yabucoa, Rafael Surillo-Ruiz ("Mayor Surillo"), SM Medical Services, CSP ("SM Medical"),[1] the Director of SM Medical, Ricardo Rivera-Garcia ("Rivera"), the President of SM Medical, Victor Simmons ("Simmons"), and the Municipality's Liaison Officer with SM Medical, Lydia Ivette Cruz ("Cruz") (collectively, "defendants").

[1] The CDT is operated by SM Medical pursuant to SM Medical's contract with the Municipality of Yabucoa. (Docket No. 44 at ¶¶ 24-26.)

(Docket No. 44.) The complaint alleges that in the wake of the November 2012 Yabucoa mayoral election - in which Mayor Surillo, the Popular Democratic Party ("PDP") candidate, was elected - the plaintiffs suffered adverse employment actions because of their political ties to the New Progressive Party ("NPP"). Id.

On October 31, 2013, the Court issued a Case Management Order ("CMO"). (Docket No. 52.) Among other things, the CMO imposed a discovery deadline of October 24, 2014, and set trial to begin on April 27, 2015. Id. The CMO also mandated that the parties submit a Joint Case Management Memorandum ("Joint CMM"), which was to include a discovery plan, as well as a Proposed Joint Pretrial Order, which was to include "[t]he disclosures required by [Federal] Rule [of Civil Procedure] 26(a)(3)." Id. at pp. 2-4, 12.

The parties submitted the Joint CMM on January 21, 2014. (Docket No. 76.) The Joint CMM's discovery plan set a June 1, 2014 deadline for announcing witnesses and for supplementing initial disclosures pursuant to Federal Rule of Civil Procedure 26(e). Id. at p. 32. With respect to pretrial disclosures, the Joint CMM did not impose a deadline, but instead referred to Federal Rule of Civil Procedure 26(a)(3). Id.

On October 21, 2014, the Court extended the discovery deadline to November 21, 2014. (Docket No. 124.)

On March 2, 2015, defendants Rivera, SM Medical, and Simmons moved for summary judgment. (Docket Nos. 131-133.) On the same

day, defendants Cruz, the Municipality, and Mayor Surillo also moved for summary judgment. (Docket Nos. 135-137.)

On March 16, 2015, plaintiffs' attorney e-mailed the defendants' attorneys to announce that plaintiffs planned to use Dr. Gabriel Laborde as a witness. (Docket No. 140-1 at p. 1.) The e-mail included a statement from Dr. Laborde made under penalty of perjury on March 13, 2015. Id. at p. 2. According to the statement, Dr. Laborde provided services to defendant SM Medical from approximately October 2014 until February 27, 2015, and served as the Medical Director of the CDT from approximately October 2014 until February 11, 2015. Id.

Dr. Laborde's statement provides information he learned about certain defendants during his time at the CDT. For example, Dr. Laborde avers that on February 11, 2015, the day he was removed as the Medical Director of the CDT, he treated a patient whom he later discovered had a close relationship with Mayor Surillo. (Docket No. 140-1 at p. 2.) Dr. Laborde maintains that on February 25, 2015, defendant Simmons (the President of SM Medical) informed him that the reason he was removed as the Medical Director of the CDT was because Mayor Surillo had complained that Dr. Laborde had made the mayor's friend "wait too long." Id. Dr. Laborde states that according to Simmons, Mayor Surillo told Simmons that the Municipality would terminate SM Medical's contract

for the administration and operation of the CDT unless he "got rid of" Dr. Laborde. Id. at p. 3.

Dr. Laborde's statement includes other examples of Mayor Surillo's influence over the clinic. For example, Dr. Laborde states that "when individuals close to [Mayor] Surillo or high ranking members of the new [PDP] administration visited the CDT, [defendant Cruz, the Liaison Officer] would demand that they be treated with preference over other patients." (Docket No. 140-1 at p. 3.) As another example, Dr. Laborde describes how defendant Simmons once informed him that Mayor Surillo had sent "lousy employees" to work for SM Medical. Id. Finally, Dr. Laborde details how certain employees "answered and responded to the Mayor" instead of to SM Medical, its staff, or its employees, "despite the fact that SM Medical was their employer." Id.

On March 17, 2015, defendants SM Medical, Rivera, and Simmons filed a motion *in limine* to preclude plaintiffs from using Dr. Laborde as a witness and to exclude his statement. (Docket No. 140.) Defendants Cruz, Mayor Surillo, and the Municipality subsequently moved to join the motion, (Docket Nos. 141, 152), which the Court granted, (Docket Nos. 142, 153). On March 18, 2015, plaintiffs opposed the defendants' motion. (Docket No. 147.)

On March 20, 2015, the parties jointly moved to, *inter alia*, extend the time for filing the Joint Proposed Pretrial Order, (Docket No. 150), which the Court partially granted, (Docket

No. 151). On April 2, 2015, the parties filed the Joint Proposed Pretrial Order. (Docket No. 154.)

On April 8, 2015,[2] plaintiffs filed their opposition to defendants' motions for summary judgment. (Docket Nos. 155-160.)

On April 9, 2015, defendants Cruz and Mayor Surillo filed a motion to continue the jury trial in light of the pending motions for summary judgment. (Docket No. 161.) On April 10, 2015, the Court granted the motion to continue. (Docket No. 163.)

**DISCUSSION**

Defendants ask the Court to bar plaintiffs from presenting the testimony of Dr. Gabriel Laborde, a witness identified after the close of discovery. (Docket No. 140.) Defendants advance two grounds for preclusion: (1) timeliness; and (2) relevancy. See id. The Court addresses each argument in turn.

***Timeliness***

Defendants argue that plaintiffs' disclosure of Dr. Laborde as a witness was untimely and thus his testimony should be precluded. See Docket No. 140 at ¶¶ 2-3, 6-9. Plaintiffs informed defendants' attorneys that they planned to use Dr. Laborde as a witness on March 16, 2015, (Docket No. 140-1 at p. 1), almost four months after the Court-imposed discovery deadline of November 21, 2014, (Docket No. 124). Defendants contend that this late disclosure

[2] On March 19, 2015, plaintiffs requested an extension to respond to defendants' motions for summary judgment, (Docket No. 148), which the Court granted, (Docket No. 149).

"effectively prevented [them] from examining the 'witness' in order to ascertain how he would be utilized during the trial of this case." (Docket No. 140 at ¶ 3.) Plaintiffs concede that their disclosure was untimely, but maintain that "there is no way they could have identified Dr. Laborde as having relevant information, much less being a possible witness, because his relevancy came to be [sic] on February 25, 2015, long after the discovery deadline had expired." (Docket No. 147 at ¶¶ 17-18.)

Federal Rule of Civil Procedure 26 provides the basic framework for disclosure of witnesses. Rule 26(a)(1)(A)(i) requires the initial disclosure of non-impeachment witnesses.[3] The initial disclosures typically must be made "at or within 14 days after the parties' Rule 26(f) conference." Fed. R. Civ. P. 26(a)(1)(C). Once made, the disclosures must be kept current. See Fed. R. Civ. P. 26(e)(1) (explaining the duty to supplement discovery responses). "Since an important object of these rules is to avoid trial by ambush, the district court typically sets temporal parameters for the production of such information." Macaulay v. Anas, 321 F.3d 45, 50 (1st Cir. 2003) (citing Fed. R. Civ. P. 16(b)). Such a timetable "promotes fairness both in the discovery process and at trial." Thibeault v. Square D Co., 960

[3] A party must provide to the other parties: "the name . . . of each individual likely to have discoverable information - along with the subjects of that information - that a disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).

F.2d 239, 244 (1st Cir. 1992). In the event that no deadline is set, however, Rule 26(a)(3) imposes a baseline requirement that pretrial disclosures be made at least thirty days before trial. Fed. R. Civ. P. 26(a)(3)(B).[4] If a disclosure is untimely, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As an initial matter, the Court does not necessarily agree with the parties that plaintiffs' announcement of Dr. Laborde as a witness was untimely. The parties assume that the discovery deadline is synonymous with the deadline for disclosing trial witnesses. The First Circuit Court of Appeals, however, has found that Rule 26(a)(3) "does not require disclosure of a prospective witness' identity during the discovery period." Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 49 (1st Cir. 1998). Thus, although the *discovery* deadline was set for November 21, 2014, (Docket No. 124), the parties were not necessarily required to disclose their witnesses by that date.

[4] Rule 26(a)(3)'s pretrial disclosure requirement mandates that a party provide to the other parties certain information about the evidence that it may present at trial other than solely for impeachment, including: (i) "the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises"; and (ii) "the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition." Fed. R. Civ. P. 26(a)(3).

The Federal Rules of Civil Procedure provide that "[u]nless the court orders otherwise," the pretrial disclosures "must be made at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(B). By its plain and ordinary terms, one of two deadlines controls pretrial disclosures: (1) as ordered by the Court; or (2) at least 30 days before trial. In this case, the precise deadline for announcing witnesses is unclear. According to the Court's CMO, the pretrial disclosures are due as part of the Proposed Joint Pretrial Order. See Docket No. 52 at p. 12 ("The Proposed Joint Pretrial Order must contain: The disclosures required by Rule 26(a)(3) . . . ."). According to the parties' Joint CMM, the parties had until June 1, 2014, to announce witnesses and to supplement initial disclosures. (Docket No. 76 at p. 32.) With respect to the pretrial disclosure deadline, however, the Joint CMM's discovery plan refers to Rule 26(a)(3) without further elaboration. Id.

To the extent the parties were required to disclose witnesses in the Proposed Joint Pretrial Order, plaintiffs' disclosure of Dr. Laborde was timely. In this case, plaintiffs first notified defendants of their intent to call Dr. Gabriel Laborde as a witness on March 16, 2015. (Docket No. 140-1 at p. 1.) According to the Court's CMO, the pretrial disclosures were initially due on March 23, 2015, as part of the Joint Pretrial Order. See Docket No. 52 at p. 12. Due to the parties' jointly-requested extension, the deadline to file the Joint Pretrial Order - and, therefore, the

Rule 26(a)(3) disclosures - was moved to April 2, 2015. (Docket No. 151.) On April 2, 2015, the parties did file the Joint Proposed Pretrial Order, in which plaintiffs listed Dr. Laborde as a witness. (Docket No. 154 at p. 80.) As such, despite being made after the close of discovery, plaintiffs' disclosure of Dr. Laborde in the Joint Proposed Pretrial Order was not untimely. See Hernandez-Torres, 158 F.3d at 49 (finding district court did not err in permitting witness named in the October 16, 1996, pretrial order - "well over thirty days before trial commenced on November 21, 1996" - to testify at trial).[5]

Regardless, even assuming, as the parties do, that the discovery deadline in this case was synonymous with the pretrial disclosure deadline and that plaintiffs' disclosure was untimely, the sanction of preclusion is not automatic. See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009) ("Preclusion . . . 'is not a strictly mechanical exercise.'" (quoting Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este, 456 F.3d 272, 276 (1st Cir. 2006))). The mere fact of a late witness disclosure does not require the district court to bar the testimony. See Laplace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002)

[5] Plaintiffs' disclosure also comports with Rule 26(a)(3)(B)'s baseline rule that pretrial disclosures be submitted at least 30 days before trial. Until recently, the trial was set for April 27, 2015. (Docket No. 52.) At the time it was made, plaintiffs' March 16, 2015, disclosure occurred at least 30 days before trial. In any event, the Court has postponed trial until the resolution of defendants' motions for summary judgment. (Docket No. 163.)

("[D]istrict courts have broad discretion in meting out Rule 37(c) sanctions for Rule 26 violations.").

Here, the Court finds that even if plaintiffs failed to disclose Dr. Laborde as a witness timely, preclusion is unwarranted because the late disclosure is "substantially justified" or "harmless." To determine whether a party's late disclosure is "substantially justified" or "harmless," the district courts consider: (1) the history of the litigation; (2) the need for the evidence; (3) the justification (or lack of one) for the late disclosure; (4) the opposing party's ability to overcome the late disclosure's adverse effects (surprise and prejudice); and (5) the impact of the late disclosure on the court's docket. Esposito, 590 F.3d at 76-78 (citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)).[6]

As for the first factor, it does not appear from the record that plaintiffs have a history of violating the Court's schedule orders (and defendants do not argue otherwise). Compare Esposito, 590 F.3d at 79 ("This is not a case of a party repeatedly balking at court-imposed deadlines. [The plaintiff] missed one deadline and requested an extension of the pre-trial and trial dates after missing that deadline, albeit several weeks after the deadline had

[6] Although Esposito involved the late disclosure of experts, courts have applied the factors to late disclosures generally. See, e.g., Harriman v. Hancock Cnty., 627 F.3d 22, 29-32 (1st Cir. 2010); Kirouac v. Donahoe, Civ. No. 2:11-00423 (NT), 2013 WL 5729532, at *2-3 (D. Me. Oct. 22, 2013).

passed.”), with Santiago-Diaz, 456 F.3d at 277 & n. 4 (noting, in upholding the preclusion of a late-disclosed expert witness, that the sanctioned party’s “dereliction was both obvious and repeated” and that “[t]he record makes manifest that the plaintiff was guilty of several discovery violations besides those related to her expert witness”). As such, the first factor cuts in plaintiffs’ favor.

As for the second factor, plaintiffs maintain that Dr. Laborde’s testimony is “relevant” for establishing the ‘under color of [state] law’” element of their section 1983 claim. (Docket No. 147 at ¶¶ 15-16.) According to plaintiffs, Dr. Laborde’s testimony helps to establish that Mayor Surillo “is the boss” at the CDT, rebutting defendants’ contention that Mayor Surillo “had no bearing of influence in the CDT affairs.” Id. at ¶ 15. Plaintiffs’ opposition to defendants’ motion for summary judgment, however, does not mention Dr. Laborde. See Docket Nos. 155-160. While Dr. Laborde’s testimony arguably aids plaintiffs, it does not “make or break” their case. Compare Harriman, 627 F.3d at 32 (affirming district court’s preclusion of late-disclosed witness testimony where the affidavits “would make the propriety of summary judgment less clear,” but “precluding them [did] not obviously or automatically result in dismissal”), with Esposito, 590 F.3d at 78-79 (reversing district court’s preclusion of plaintiff’s only expert witness who was not designated in time because plaintiff’s need for the expert was so great that the

decision to preclude the expert, "although technically not a dismissal of [his] case, effectively amounted to one"). Thus, because plaintiffs' need for the testimony is not particularly strong, the second factor does not cut in plaintiffs' favor.

As for the third factor, to justify the late disclosure, plaintiffs contend that the relevancy of Dr. Laborde's testimony did not manifest itself until after the discovery period concluded. (Docket No. 147 at ¶¶ 17-19.) According to plaintiffs, Dr. Laborde's relevancy came to light on February 25, 2015, the day his conversation with defendant Simmons took place. Id. at ¶¶ 17-18. Therefore, plaintiffs argue, "no matter how diligent [they] could have been, there is no way [plaintiffs] could have identified Dr. Laborde as having relevant information, much less being a possible witness" until after the discovery deadline had expired. Id. at ¶ 18. Plaintiffs offer a legitimate reason for the late disclosure. Contra Harriman, 627 F.3d at 29-30 (upholding district court's decision to preclude affidavits of untimely disclosed witnesses where defendants argued that the witnesses "could have been identified in the exercise of reasonable diligence during discovery and where plaintiff's justification for the late disclosure was 'nonexistent'"). The third factor thus cuts in plaintiffs' favor.

As for the fourth factor, the Court finds that defendants are able to overcome the adverse effects (surprise and prejudice) of

plaintiffs' late disclosure. Plaintiffs informed defendants about their plan to use Dr. Laborde as a witness on March 16, 2015, (Docket No. 140-1 at p. 1), which was two weeks after defendants filed their motions for summary judgment, (Docket Nos. 131-133, 135-137). Defendants arguably were inconvenienced, if not prejudiced, by the late disclosure. Cf. Esposito, 590 F.3d at 79 ("[A]lthough the defendants here do not discuss in any great detail how the late disclosure prejudiced them, they obviously went through the pains of preparing a dispositive summary judgment motion premised on [plaintiff's] lack of an expert in an expert-dependent case."). Plaintiffs do not, however, utilize Dr. Laborde's testimony in their opposition to defendants' summary judgment motions. See Docket Nos. 155-160. At this point, therefore, the late disclosure is simply a harmless inconvenience. Contra Harriman, 627 F.3d at 31 (finding plaintiff's late disclosure was not a "harmless inconvenience" where defendants prepared and filed a summary judgment motion premised on evidence submitted before the discovery deadline while plaintiff opposed the motion with affidavits obtained after that deadline, from witnesses whom he had not provided the defendants an opportunity to depose).

Moreover, considering the recent postponement of trial requested by the defendants due to their pending motions for summary judgment, (Docket No. 163), both parties now have adequate time to depose Dr. Laborde before trial. Contra Lohnes v. Level 3

Commc'ns, Inc., 272 F.3d 49, 60 (1st Cir. 2001) (finding district court appropriately excluded a party's belatedly proffered expert affidavit in ruling on the opposing party's motion for summary judgment: "The [party's] failure to unveil his expert until after [the opposing party] had moved for summary judgment deprived [the opposing party] of the opportunity to depose the proposed expert . . . [which] is exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate."). Therefore, the fourth factor cuts in plaintiffs' favor.

As for the fifth factor, plaintiffs' late disclosure has little impact on the Court's docket. Ordinarily, the Court's ability to manage its docket is compromised when a party neglects to comply with reasonable deadlines. See Santiago-Diaz, 456 F.3d at 277. In this case, although trial was originally scheduled for April 27, 2015, the Court recently granted defendants' motion to continue the trial. (Docket No. 163.)[7] With trial postponed until the resolution of defendants' pending motions for summary judgment, plaintiffs' late disclosure regarding Dr. Laborde is unlikely to impact the Court's docket. Accordingly, the fifth factor cuts in plaintiffs' favor.

While the Court is not convinced that plaintiffs committed a discovery deadline violation in disclosing Dr. Laborde as a witness

[7] Indeed, plaintiffs only filed their opposition to defendants' motions for summary judgment on April 8, 2015. See Docket No. 155-60.

when they did, the Court nevertheless finds that even if plaintiffs' disclosure was late, the circumstances of this case do not warrant the severe sanction of preclusion. The Court, therefore, declines the defendants' invitation to preclude Dr. Laborde's testimony on timeliness grounds.

***Relevance***

Defendants' second argument for preclusion of Dr. Laborde's testimony is relevancy. According to defendants, Dr. Laborde's testimony is irrelevant because he "was not even working at SM Medical at the time the alleged discriminatory acts occurred"; his statement does not "mention of [sic] any of the plaintiffs," including "conversations with the plaintiffs," or even "conversations . . . regarding the plaintiffs"; and and his statement fails to demonstrate "any knowledge of relevant facts regarding the political discrimination claims alleged by the plaintiffs." (Docket No. 140 at ¶ 4.)

The Federal Rules of Evidence provide generally that evidence must be relevant to be admissible. See Fed. R. Evid. 402. Evidence is relevant if it has a "tendency to make the existence of [any fact that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence may be 'relevant' under Rule 401's definition, even if it fails to prove or disprove the fact at issue - whether taken alone or in combination with all

other helpful evidence on that issue." United States v. Guzman-Montanez, 756 F.3d 1, 7 (1st Cir. 2014) (internal quotation marks omitted).

Plaintiffs bring a claim pursuant to 42 U.S.C. § 1983, which creates a private cause of action for persons who have had their civil rights violated by state actors. To succeed on their section 1983 claim, plaintiffs must prove that someone deprived them of a right protected by the Constitution or the laws of the United States and that the perpetrator acted under color of state law. Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000). Under certain circumstances, a private party may be deemed to have acted under color of law for purposes of section 1983. In the context of a motion to dismiss, this Court previously found that plaintiffs sufficiently alleged facts meeting the "state compulsion test" for proving private party section 1983 liability:

> "Under the state compulsion test, a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).
>
> Plaintiffs' third amended complaint describes several instances in which Mayor Surillo compelled and encouraged defendants SM, Rivera, and Simmons to execute adverse employment decisions against plaintiffs. For example, when defendant Rivera demoted plaintiff Medina, he explained to her that Mayor Surillo had requested Medina's relocation to another CDT position and that he was going to comply with this request "because it had been an order from the mayor, who is the boss, and thus

> [he] had to comply." (Docket No. 44 at ¶ 97.) Defendant Rivera further explained that plaintiff Medina "had to understand that [Mayor Surillo] wanted his people in the administrative positions to have direct communication with them." Id. at ¶ 98. On another occasion, defendant Rivera explained that they "had to get rid of [plaintiff] Alba [Diaz]" because "the new mayor [Surillo] wants people whom he trusts in the high ranking and administrative positions." Id. at ¶ 129.

(Docket No. 109 at pp. 16-17.)

According to plaintiffs, Dr. Laborde's testimony is relevant to the "under color of state law" issue because it evidences the extent of Mayor Surillo's power and influence over the CDT's affairs. (Docket No. 147 at ¶¶ 15-16.) The purpose of Dr. Laborde's testimony is, in essence, to show that Mayor Surillo was effectively "the boss" at the CDT and that he was in control of or in cahoots with certain SM Medical employees, including defendants Simmons and the Liaison Officer, Cruz. See id.

At this point, the Court cannot determine that Dr. Laborde's testimony is irrelevant. Based on his statement, Dr. Laborde's testimony may shed additional light on Mayor Surillo's role at the CDT and his relationship with SM Medical employees. Although he did not work at the hospital during the time that the adverse actions at issue occurred, Dr. Laborde's testimony regarding his experiences as a CDT employee is relevant to understanding whether certain defendants acted under color of state law. For instance, Dr. Laborde's interactions with defendant Simmons, who informed him that he (Dr. Laborde) was terminated at Mayor Surillo's behest,

make it more probable that defendant Simmons was acting under color of state law when he took the adverse actions at issue against plaintiffs. See Fed. R. Evid. 401.

Of course, not all relevant evidence is admissible. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[E]xclusion pursuant to Rule 403 is an extraordinary measure and must be used in limited cases because it excludes relevant evidence." United States v. Lopez-Diaz, 862 F. Supp. 2d 74, 79 (D.P.R. 2012) (Besosa, J.). A district court has wide discretion to determine the admissibility of evidence, and assessments of the evidence's probative value and dangers are matters "first for the district court's sound judgment." See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008) (internal quotation marks omitted).

Defendants argue that "the inclusion of this untimely and irrelevant new witness will not only delay the proceedings. . ., but will have the effect of reopening the discovery and possibly supplementing the motions for summary judgment filed by defendants." (Docket No. 140 at p. 3.) As previously discussed, however, the Court recently granted defendants' motion to continue the trial, delaying the trial until defendants' pending summary

judgment motions are resolved. (Docket No. 163.) Because the submission of Dr. Laborde's testimony will not serve to delay the proceedings further, the probative value of Dr. Laborde's testimony is not substantially outweighed by the danger of undue delay. Under the circumstances, the Court does not find that the extraordinary measure of excluding Dr. Laborde's relevant testimony pursuant to Rule 403 is warranted.

**CONCLUSION**

For the reasons expressed above, the Court finds that neither issues of timeliness nor relevancy prevent the admission of Dr. Laborde's testimony. Accordingly, the Court **DENIES** defendants' motion *in limine*, (Docket No. 140).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 15, 2015.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE